WILLIAM HILL & A., *v.* THE PINE RIVER BANK.

One, who, being assignee of certain shares in a bank, was entitled to receive of the bank a certificate thereof, may maintain assumpsit against the bank for a wrongful refusal to issue to him such certificate.

Where a husband causes shares of stock, held by a third person in trust for him, to be transferred to his wife, *prima facie* no trust results in his favor.

Upon a verdict by consent, it is to be assumed that everything that could have legally been found for the party in whose favor the verdict was taken, has been so found.

Where A., the owner of shares in a bank, transfers them to B., and the bank thereupon issue and deliver to B. a new certificate for the shares in terms "transferable after the holder pays all his liabilities to said bank," this is a waiver of any right of the bank, if it had such, to refuse to allow a transfer until A.'s indebtedness to the bank should be discharged.

Where a married woman in another State, where she resides and is competent to contract as if sole, executes a transfer of certain stock owned by her in a corporation in this State, in due form under the laws of either State, such assignment will be valid in this State.

A conveyance objectionable, merely because it is fraudulent as to the creditors, is good until avoided by them.

ASSUMPSIT. The declaration set forth, that, on the 4th day of May, 1858, Caroline D. Hill was owner of ten shares in Pine River Bank, of the value of 100 dollars each, and said bank, on said 4th day of May, &c., issued to her a certificate signed by its president and cashier, reciting that she was owner of said ten shares, numbered from 152 to 161 inclusive, and that said shares were transferable after the holder pays all his liabilities to said bank, by making an assignment on the back of said certificate, and causing the same to be delivered to the cashier of said

bank; that said Caroline D. Hill, on the 10th of October, 1859, having paid all her liabilities to, and not being liable to, said bank, by her assignment to said Hill and Buffum of that date, on the back of said certificate, by her signed, for value received assigned said certificate to said Hill and Buffum; and afterwards, on the 16th of October, 1860, she not being liable to said bank, caused said certificate and assignment thereon to be delivered to the cashier of said bank; by reason whereof the said bank promised to issue to the said Hill and Buffum a new certificate of said ten shares of the capital stock of said bank, and to pay to them the dividends on said stock, yet, though, &c., has not issued such certificate, nor paid such dividends, &c. A second count alleged the same facts as to ten other shares numbered 122 to 131. A third and fourth count set forth, that, on the 10th of October, 1859, Caroline D. Hill, being the proprietor of ten shares numbered, &c., of the value, &c., and having a certificate thereof, dated May 4th, 1858, sold said stock to the plaintiffs, and assigned to them said certificate, and on the 10th of October, 1860, caused said certificate to be delivered to the cashier, whereby the plaintiffs became owners of said stock, and the said bank became liable to enter said transfer on their books and to issue a new certificate to them and to pay them the dividends on said shares, yet, &c. The fifth count was for money had and received, $3000. In neither of the counts was the making or the date of any dividend alleged.

The defendants pleaded the general issue.

*Christie,* for defendants, objected that the plaintiffs' remedy should be by an application for a mandamus; but the court overruled the objection, and the defendants excepted.

The plaintiffs produced certificates and transfers by Mrs. Hill as follows, the signatures of which were admitted:

"PINE RIVER BANK.

$1000.                    TEN SHARES.

Be it known, that Mrs. Caroline D. Hill, of Berwick, Me., is the proprietor of ten shares in the capital stock of Pine River Bank, numbered, &c., inclusive, which shares are transferable after the holder pays all his liabilities to said bank, by making an assignment on the back of this certificate, and causing the same to be delivered to the cashier of said bank.

In testimony whereof, the seal of said Corporation is hereto affixed, the 4th day of March, one thousand eight hundred and fifty-seven.

L. D. SAWYER, President.

WM. SAWYER, Jr., Cashier."

Ossipee, New Hampshire.

Upon the certificate was endorsed:

"For value received I hereby assign the within named certificate to William Hill, of, &c., and D. H. Buffum, of, &c. Dated the 10th October, 1859.                    CAROLINE D. HILL."

C. Nason testified that he received these certificates and transfers of D. H. Buffum, and at his request went to Ossipee and presented them to Mr. Sawyer, the cashier of Pine River Bank, and demanded a new certificate. He declined to issue it, and referred him to the president, who also declined. A letter of the cashier was offered in evidence, stating that the semi-annual dividends of the bank had been three per cent., and declining to send the dividends on the shares of Mrs. C. D. Hill.

For the defendants, the cashier, Wm. Sawyer, testified, by reference to the bank books kept by him, that Oliver Hill, the husband of Mrs. C. D. Hill, was a large stockholder in the Pine River Bank, but had no shares standing in his own name. He had eighty shares standing in the name of his son, John F. Hill. At the commencement of the bank, O. Hill took fifty other shares, numbered 122 to 171, including those here in controversy. April 29, 1857, these fifty shares are entered on the books to Joseph Hodgdon, as paid for in cash. At the same time three notes, amounting to $5000, signed by Hodgdon, as principal, and O. Hill, as surety, one of $2000, in sixty days, $2000, in ninety days, and $1000, in one hundred and twenty days, were discounted to Hodgdon. The interest was paid by him till May 1858. On the 4th of May, 1858, $4000 of these notes were paid by O. Hill, by notes of John S. Hayes. for $1500 in 4 mos., John A. Smiley $500 in 4 mos., B. F. & D. P. Hill $1200 in 4 mos., and Alvin B. Spencer $800, in 4 mos. On these notes Oliver Hill was endorser. The interest on these notes and some arrears on Hodgdon's notes were paid by B. F. & D. P. Hill's note for $200, to O. Hill, payable in 4 mos., and by him endorsed, which note has been almost paid by proceeds of notes of O. K. Sherman, endorsed by O. Hill to the bank as collateral. The other notes all belong to the bank, and are unpaid, but are included in an execution against Oliver Hill. The signers of them are insolvent. To June 29, 1860, the interest on them was paid by Oliver Hill from time to time, not always when due. At the time these notes were transferred to the bank, O. Hill paid the interest overdue on $3000 of Hodgdon's notes, and Hodgdon's notes to the amount of $4000 were cancelled.

On the 30th of July 1857, Joseph Hodgdon transferred these fifty shares to Ichabod Hodgdon, and on the 4th of May, 1858, Ichabod Hodgdon transferred forty of these shares to Mrs. Caroline D. Hill. Nov. 7, 1859, Mrs. C. D. Hill transferred twenty of these shares, No. 132 to 151, to William Hill and D. H. Buffum. The remaining twenty shares, No. 122 to 131, and 152 to 161, stand on the books in the name of Mrs. C. D. Hill.

The first dividend on the fifty shares was paid to J. Hodgdon, (Oliver Hill being present,) in part by payment of interest on his notes. The second dividend, July 1, 1858, was paid to Joseph Hodgdon on ten shares standing in his name, and on the other forty shares, standing in the name of Mrs. C. D. Hill, to Oliver Hill. He had no order from Mrs. Hill for the dividend. At the same time he received the dividend on eighty shares standing in the name of John F. Hill without any order from him. The dividends in Jan. and July, '59, on Mrs. Hill's

forty shares, and those of Jan. and July, 1860, on her twenty shares, were paid to O. Hill, and he received the dividend of Jan. 1860, on twenty shares transferred to Great Falls Bank. These were the last dividends paid on these shares.

Oliver Hill paid all the interest that has been paid on the notes, amounting to $4000, to June 29, 1860. He became insolvent about the time Nason presented the certificates and assignments to the bank. He was then indebted to the bank $14,733, on his own account, on these notes and others, and was surety for Mathes $3,200. On the execution of the bank against him, one hundred and forty shares of the Pine River Lumber Company were sold, Jan. 18, 1862, and $1163.69 allowed on the execution besides cost, and $717.93 was paid by Sherman, Feb. 3, 1863. Mrs. C. D. Hill was not indebted to the bank. The witness never saw her.

Joseph Hodgdon testified that he took fifty shares of the stock of Pine River Bank, at its commencement, at the request of Oliver Hill. "He furnished the money to pay for it, and agreed to hold me harmless. I held the stock for Mr. Hill." Notes were discounted at the time to the amount of the stock, $5000, and Hill had the money received for them, and paid the discount. Hill received the dividends, and paid the interest. "I never received, or paid a cent, till the transfer to Mrs. Hill. I then took ten of the fifty shares, and paid for them. I have pledged them, otherwise am owner of them still, and have received the dividends."

The defendants' counsel contended, that, by the terms of the certificates, the shares were not assignable, till all liabilities of the holder to the bank were paid; that it was shown that Oliver Hill was the owner of these shares, the shares standing in the name of Mrs. Hill merely as his trustee, and that he was then and still largely indebted to the bank.

The counsel for the plaintiffs replied that the terms of the certificate were in pursuance of an illegal by-law of the bank, and were not legal or binding, and referred to the Compiled Statutes, ch. 147, sec. 21, p. 317, and claimed that the plaintiffs were *bona fide* purchasers of said shares, for a valuable consideration, without notice.

The by-laws of the bank were put in evidence; part of the 5th, and part of the 6th articles were as follows:

Article 5. On the payment of his stock, the stockholder shall receive a certificate in the following form:

### PINE RIVER BANK.

$———                                              ———SHARES,

Be it known, that———of———in the County of———and State of———is the proprietor of———shares in the Capital stock of the Pine River Bank, numbered———inclusive, which share———transferable, after the holder pays all his liabilities to said bank, by making an assignment on the back of this certificate, and causing the same to be delivered to the Cashier of said Bank.

In testimony whereof, the seal of said Corporation is hereunto affixed, the————day of————one thousand eight hundred and————

————, President.

————, Cashier.

Ossipee, New Hampshire.

On any transfer of any share, or shares, by the holder, his executor, or administrator, the cashier shall issue a new certificate in manner and form above prescribed, in favor of the transferee. Every transfer shall be absolute, when recorded at the bank and not otherwise; provided, however, that any stockholder may deposit in said Bank his certificate or certificates of shares, as collateral security for any debt, he may owe the bank, &c.

Art. 6. It shall be the duty of the cashier, &c. He shall enter on the bank books every transfer, or conveyance of all shares, in the bank, on receiving the same, and no sale shall be deemed valid until so entered.

David H. Buffum testified for the plaintiffs : "At the time of the assignment of these certificates Oliver Hill was not indebted to me. I was under no liabilities for him. William Hill, whose wife is my aunt, was then surety for Oliver Hill to the amount of about $15,000. Oliver Hill applied to us for money, representing that about $20,000 would pay his debts and enable him to go along. We agreed to let him have the money. He transferred to us this bank stock and some other, and many notes, and we advanced him $21,000 in money—$15,000 in October, and $6,000 in November. A writing was made between us, stating our agreements, about the same time I received the assignments of the Pine River Bank shares of Oliver Hill. I had no knowledge of any transactions of O. Hill with Pine River Bank, and no direct knowledge that he was indebted to the Pine River Bank, though I knew he was indebted to most of the banks in the vicinity. I supposed he might be indebted to them. I supposed he might be under obligation to them on business paper endorsed by him. He got business done at all the surrounding banks. The only conversation I remember was, that there was no lien on them whatever. I did not know or suspect that he was endorser of B. F. & D. T. Hill's notes in Pine River Bank—I supposed we had all these—nor on notes of Smiley. I supposed we had the whole; I did not know or suppose Hayes owed Pine River Bank; he owed the Saving Bank. I did not know or suppose that he endorsed any of Alvin V. Spencer's paper. I received the certificates and transfers, on the day of their date, 10th Oct. 1859, (the date is my writing,) from Oliver Hill, and paid him for them, at Wells & Eastman's office. O. Hill and William Hill, Wells & Eastman, and myself were present. When the writing was made I do not recollect that I was present. It was handed to me, and I locked it up. The stocks and securities were assigned to us, upon an agreement of Wm. Hill and myself on one side, and Oliver Hill on the other, for the purposes specified in the writing produced. I think I had the paper about the date of it. It might be before or after, possibly, two or four weeks after. I doubt if W. Hill

was present when the paper was delivered to me. There was no other agreement in writing ever. I understood I paid substantially all the debts of O. Hill. I regarded him as solvent for eight or ten months after these transfers. His insolvency grew out of his endorsements for other parties. I did not know of any indebtedness of O. Hill to Pine River Bank. O. Hill desired me not to have these shares transferred on the books of the bank, at the time the others were, because he said they were his wife's shares, and he did not want them transferred. These certificates were endorsed about the time I paid the money. I did not pay the money at once. I paid notes of O. Hill's as he authorized me through the month. No objection was made to the transfers of the other shares in Pine River Bank. None of them were in his name. The money paid was borrowed by William Hill and myself on our joint names. No doubt I can get enough from the property assigned to repay the money advanced, but not enough to discharge our obligations. The property was all under my management. I have disposed of so much as has been disposed of, and applied the proceeds. I have eighty-five shares of Pine River Bank stock. I have sold none of that stock. I could find no one to give near what I thought it worth. There have been more than six lawsuits relative to these transactions, the bills for which have not been paid. I would not do what I have done in the business for $1500."

The witness testified that he had kept accounts of all his receipts and payments under the agreement referred to, *but though enquired of and opportunity afforded, he did not produce them.* He was then examined at great length as to the sums collected by him and applied ; *the tendency of such evidence being to show that the plaintiffs had been repaid all the money advanced by them at the time said transfers were made, without recourse to the shares in controversy.*

The plaintiffs introduced evidence of the laws of Maine, where Oliver Hill and his wife, Caroline D. Hill, have long had their home, as follows, Maine Rev. Stat. of 1857. Chap. 61, sec. 1 : "A married woman of any age, may own in her own right, real and personal estate acquired by descent, gift or purchase, and may manage, sell, convey and devise the same by will, as if sole, and without the joinder or assent of her husband, but real estate, directly or indirectly conveyed by him, or given, or devised to her by his relatives, cannot be conveyed by her, without the joinder of her husband to such conveyance. When payment was made for property conveyed to her, from property of her husband, or it was conveyed by him to her, without a valuable consideration paid thereon, it may be taken, as the property of her husband, to pay his debts, contracted before such purchase."

The written agreement referred to, was made part of the case and was as follows :

Received of Oliver Hill sixty shares of Pine River Bank stock issued to J. F. Hill and by him transferred to us, forty shares of Pine River Bank issued to Caroline D. Hill and transferred by her to us (also other

stocks and demands amounting in all nominally to about fifty thousand dollars) assigned to pay money which we have now advanced and paid for him, or which we may advance hereafter and pay for him; also to pay the Great Falls Bank and the Savings Bank for the County of Strafford, for notes on which Wm Hill is liable for said O. Hill as surety or otherwise, also to pay Wells & Eastman and Great Falls Bank for all notes or money due from said O. Hill, on his own account or as endorser or guarantor, except notes of Wentworth & Co., endorsed by said O. Hill or signed by him as surety and guaranteed by John E. Goodwin not to be paid by us.

The money advanced by us for said O. Hill, and the cash paid out by Wells & Eastman for him, to be first paid, (the other claims last) and reasonable charges for our services and expenses in disposing of said property. We agree to do the best we can in disposing of said property, and to pay the balance if any to said O. Hill.

November 5, 1859.

We assent to this arrangement. Wells & Eastman for themselves and Great Falls Bank for whom they are attorneys.

WELLS & EASTMAN.<br>
WM. HILL.<br>
D. H. BUFFUM.

Wm. Hill was not offered as a witness, and did not appear.

By consent of the parties a verdict was taken for the plaintiffs, subject to the opinion of the court. If the verdict is sustained the parties agree that the damages shall be assessed by an auditor to be appointed by the court.

*Christie* and *L. D. Sawyer*, for defendants.

I. By the terms of the certificate the shares were not assignable till all liabilities of the holder to the bank were paid. "The provision in the certificate with regard to the lien was binding on the holder by his acceptance of the certificate, such acceptance being equivalent to an agreement that the stock should be subject to the lien." *Vansands* v. *Middlesex County Bank*, 26 Conn. 144. 19 U. S. D. 152, section 174.

The plaintiffs put in evidence the by-laws of the bank, and say that the terms of the certificate were in pursuance of an illegal by-law, and were not binding. To show the illegality of the by-law (prescribing the form of the certificate) they cite sec. 21, chap. 147 Comp. Statutes; but we say that this statute has nothing to do with the case. It is wholly immaterial whether the by-law was or was not valid.

The parties have made a special contract relative to the lien, and there is nothing in the statute rendering it illegal for them to make such a contract. The statute prohibits only one mode of restricting the free sale of shares. It declares that the free sale, &c., shall not be restricted by any by-law of the bank. It does not say that the stockholder cannot make an agreement with the corporation which shall operate as a restric-

tion, or that those restrictions are invalid which individual stockholders have voluntarily imposed upon themselves by their own agreement.

If the stockholder did not intend to assent to the lien clause and agree that it should be in force so far as his stock was concerned, he should have refused to accept the certificate containing this clause.   He might, in that event, have resorted to his legal remedies against the bank for not giving him a certificate in a proper form.   It was perfectly competent for him to agree to waive a statute provision enacted for his benefit; " *aliquis renunciare potest juri pro se introducto.*"   Angell & Ames on Corporations, sec. 342, (seventh edition).

The equities of the case are on the side of the bank.   The original stockholder accepted the certificate with the lien clause in it, thereby giving the bank reason to suppose that he waived all right to object to that clause, and in fact assented to it.   He obtained loans of the bank on the supposition which his conduct gave rise to, that his stock was pledged for the payment of the loan.   In view of all these facts we say that he and his assignees are estopped to deny that his stock is subject to the lien in favor of the bank.   *McCready* v. *Rumsey*, 6 Duer. (N. Y.) 574; *McDowell* v. *Bank of Wilmington*, 1 Harrington, 27; *Morgan* v. *Bank of North America*, 8 Sergt. & R. 73.

II.   The evidence shows Oliver Hill to have been the owner of the stock.   Joseph Hodgdon's testimony on this point is uncontradicted. The plaintiffs did not even cross-examine him.

Hill certainly owned the stock *until* the transfer to his wife.   Did he then *cease* to own it?   So far as any attempt was made to pay for it, Hill, and not the nominal owner, was the party paying.   Hill received dividends on this stock after the transfer without any order from the nominal owner.   He transferred, with the help of the signature of the nominal holder, these shares to the plaintiffs for a consideration beneficial to himself alone, which did not move from the nominal owner.

Taking all the evidence on this subject in connection with the non-production, by the plaintiffs, of the testimony of Oliver Hill and Mrs. Caroline D. Hill, it seems to be established, beyond a reasonable doubt, that Oliver Hill was the real owner of the stock.

One of the plaintiffs testified at the trial, but did not say that he supposed Caroline D. Hill to be the owner of the stock.  The other plaintiff, the brother of Oliver Hill, *was not offered as a witness, and did not appear.*

III.   The plaintiffs are not purchasers for a valuable consideration. The evidence tends to show that the plaintiffs have been repaid all the money advanced by them at the time the transfer was made, without recourse to the shares in controversy.

The fact that Wm. Hill, one of the plaintiffs, was liable as surety for Oliver Hill, and that the stock was, by the terms of the agreement, to be held as collaterial security for the payment of these liabilities, does not make the surety a purchaser for a valuable consideration; he stands no better than his assignor.   *Williams* v. *Little*, 11 N. H. 66.

But if this pre-existing liability could give Wm. Hill any greater rights

against the bank, it would not avail in favor of Hill & Buffum in the present suit, since they must recover on their *joint* rights.

IV. If the stock is to be regarded as the property of Mrs. Caroline D. Hill, it is clear that it cannot be transferred to her order till it has been paid for. If Oliver Hill is to be considered as his wife's agent, and she now wishes to ratify his purchase in her name, she must ratify the whole transaction, and must be considered as having ageeed that the stock should be security for the payment of the notes ; or, in other words, that the stock should not be regarded as paid for till the notes were paid. *Stebbins* v. *Phenix Fire Insurance Company*, 3 Paige, 350.

If, on the other hand, Oliver Hill made a gift to his wife of these shares, then, by the laws of Maine, the shares are still the property of the husband so far as regards debts due at the time of the gift, or contracted on account of the purchase of the property given.

V. The clause in the certificate was sufficient notice to the plaintiffs of the lien.

*Wells & Eastman*, for plaintiffs.

BARTLETT, J. The defendants have properly abandoned their objection to the form of the action. Angell & A. Corp. 385 ; *Pinkerton* v. *M. & L. R. R.* 42 N. H. 424 ; *Arnold* v. *Suffolk Bank*, 27 Barb. 424. If Hodgdon originally held the shares in trust for Oliver Hill, yet they were afterwards transferred by Hodgdon to Mrs. Hill, and there was evidence upon which the jury might have found that this tranfer was assented to by Hill. From this transfer, *prima facie*, no trust would result to the husband, but it is presumptively a provision for the wife. *Dickinson* v. *Davis*, 43 N. H, 647 ; 2 Story Eq. sec. 1204 ; and if this presumption may be rebutted, see 2 Story Eq. sec. 1203, n., and if the reception of the dividends and the agreement for the transfer of the shares by Oliver Hill may be evidence tending to show that the transfer to Mrs. Hill was not intended as a provision, still it is not conclusive, as the husband may have received the dividends with the wife's consent, and she may have agreed to convey her shares as her husband had proposed ; and, besides the fact that the transfer was by Mrs. Hill alone, there was other evidence tending to show that the husband treated the shares as hers. The evidence not being conclusive, the jury might have found that the transfer of the shares to Mrs. Hill was intended as a provision for her, and, therefore, this verdict by consent will not be disturbed upon this point. *Melcher* v. *Flanders*, 40 N. H. 139. No question is raised as to whether the certificate to Mrs. Hill was issued under the proper authority, and, indeed, both parties now found their respective positions upon it and make their claims by virtue of it.

Whatever right of lien the defendants might have had at the time of the transfer to Mrs. Hill, they surrendered when they issued a certificate to her, which, in express terms, made the shares transferable when the liabilities of the holder to the bank were paid. If they had a right to refuse to issue a certificate or allow a transfer until Oliver Hill's indebtedness to them was discharged, it was nevertheless in their power to

waive that right and to allow the transfer and issue the certificate without insisting upon such payment, quite as much as it is in the power of one, having a right by virtue of a lien to detain a chattel until a debt due him is paid, to give up the chattel to the general owner without payment and thus waive his lien.    *Walcott* v. *Keith*, 22 N. H. 209; *Brackett* v. *Hayden*, 3 Shepl. 347; *Spaulding* v. *Adams*, 32 Me., 212; *Clement* v. *Little*, 42 N. H. 570; *Hale* v. *Insurance Company*, 32 N. H. 299; *Insurance Company* v. *Keyser*, 32 N. H. 313. Upon the issuing of the certificate to Mrs. Hill her legal title to the shares became complete, *Pinkerton* v. *M. & L. R. R.*; and, as we have seen, the jury might have found that the beneficial interest was also in her, and, therefore, upon this verdict by consent, she must be taken to have been the real owner of the shares, having the legal title and beneficial interest, as well as the holder of the shares and certificate.    *The Bank* v. *Laird*, 2 Wheat. 390, differs from the present case; for there, by the act of incorporation, the shares were not transferable until the debts of the holder to the bank were satisfied, unless the president and directors should direct to the contrary; and though the certificate issued declared the shares transferable on the surrender of the certificate, the president and directors of the bank in their answer denied that they had ever waived the right of lien, or directed any transfer to be made to the assignors which should stipulate to the contrary.

In this State, it is enacted by the statute of 1849, that "the free sale of shares in the stock of any corporation in this State by the owners thereof, shall not be in any way or manner restricted by the by-laws of such corporation, and all such by-laws heretofore or hereafter made shall be deemed and taken to be absolutely void." Laws ch. 860, sec. 2.   The corporation could not, therefore, by by-law impose any restriction on the free sale of shares by the owner; but here the certificate was in the form authorized by the by-law, and stands as duly issued by the defendants, and it was accepted by Mrs. Hill, and therefore it may be immaterial whether the by-law was valid or not, as the certificate may have been good by way of contract.   Angell & A. Corp. 337 & 8.   However this may be, the question is not material here, for if the restrictive clause in the certificate were void, the defence upon this ground would fail; and if it be valid, then, as Mrs. Hill was not indebted to the bank at the time of her assignment to the plaintiffs, that assignment transferred to them the right to the shares.   It seems assumed by both parties in their brief, that the transfers to and by Mrs. Hill were made in Maine, where her domicile was, and, although the case does not state the fact, yet, as it contains evidence upon which the jury might so have found upon this verdict, such must be taken to have been the fact.   By the law of Maine, Mrs. Hill's assignment thus made would be sufficient to transfer her interest in the shares to plaintiffs, Story Con. Laws, secs. 279 and 316, a.; for the form of the transfer is sufficient under our laws, Angell & A. Corp. 521, Story Conflict of Laws, sec. 383; and her capacity to contract would be governed by the law of Maine, Story Confl. Laws, secs. 66 and 66 a. and 103; and this conflicts with no policy of our law.   If the assignment to Mrs. Hill was fraudulent, or was invalid under the

laws of Maine, as against her husband's creditors, still it is good until avoided by them, *Jones* v. *Bryant*, 13 N. H. 57; and the defendants, instead of avoiding it by attachment or otherwise, or asserting a lien, have, if they ever had any lien, expressly waived it by their contract with Mrs. Hill. As the only right of the defendants to refuse a transfer was dependent upon their alleged lien, we need not examine various other questions that have been argued in this case. There must be judgment on the verdict, and, according to the provisions of the case, an auditor must be appointed to assess the damages.