## KORTRIGHT *vs.* BUFFALO COMMERCIAL BANK.

An action of *assumpsit* lies against a moneyed corporation, for refusing to permit a transfer of its stock upon the books of the corporation, when by the act of incorporation such transfer is necessary to give validity to the transaction ; *case* would lie, but *assumpsit* may be maintained.

A *certificate of stock* is transferable by a blank endorsement, which may be filled up by the holder by writing an assignment and a power of attorney over the signature endorsed.

Proof of usage as to this mode of transferring stocks is admissible; but independent of such evidence, authority to fill up the blank endorsement will be inferred.

A plaintiff in such case, is not limited to a recovery of the mere excess in the value of the stock above par, but is entitled to recover the full value of the stock at its highest price, between the time of the refusal to permit a transfer, and the time of the commencement of the suit.

THIS was an action of *assumpsit*, tried at the New-York circuit in November, 1836, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The action was brought for the *refusal* of the bank to permit a transfer to be made upon its books of 100 shares of stock, standing there in the name of *Pierre A. Barker.* On the first of October, 1834, Barker being the holder of a certificate of stock, signed by the cashier of the Commercial Bank of Buffalo, stating that he was entitled to 100 shares, of the value of $100 each, in the capital stock of that bank, transferable only on the books of

the bank by Barker, or his attorney on surrender of the certificate—sent the certificate, together with his promissory note for $10,000, as collateral security, to one *Bartow*, who was at that time cashier of the Commercial Bank at Albany, to obtain a loan of $10,000. Before transmitting the certificate of stock, he *endorsed* upon it his name, to which he attached a seal. On the second day of October, 1835, at the city of New-York, an agent of Bartow negotiated the certificate of stock above mentioned, and other stocks, by delivering the same to the plaintiff, from whom he obtained a loan of $25,000. The plaintiff gave a receipt for the stocks received by him, promising to return the same on repayment of the $25,000 with interest, on demand, after thirty days from the date of his receipt. Bartow absconded on the day that the plaintiff advanced the money, and the latter filled up the blank transfer, by writing over the name and seal of Barker an assignment, transferring the stock to himself, and constituting S. A. Sherwood attorney, to do all necessary acts to perfect the transfer. On the second of November, 1835, Sherwood went to the bank at Buffalo, and requested permission to transfer the stock, which was refused by the original stockholder, who was then acting as president of the Commercial Bank, on the ground of apprehended difficulty in respect to the *note* for $10,000, which had been sent to Bartow as collateral security for the contemplated loan, and which had not been transferred to the plaintiff. On the trial, however, it appeared that Barker had obtained possession of the note, and that this suit was probably defended for the benefit of the Commercial Bank of Albany, who claimed that Bartow had gone off their debtor to a large amount. When Barker refused to permit the transfer on the books of the bank, he conceded that he had received the $10,000 of Bartow, and offered to pay the $10,000 to Sherwood, which was declined to be accepted. It was proved, that from *January* to *June*, 1836, the stock of this bank ranged as high as from 150 to 300 per cent, advance. A witness for the plaintiff testified, that he was acquainted with the business of transferring stocks, having been in that business twenty

Kortright *v.* Buffalo Commercial Bank.

years, and that it was the universal usage in the city of New-York, and in other places, to transfer stocks by blank endorsements, or blank powers of attorney ; that he had been in the habit of transferring in this manner stocks of nearly all the states of the Union, and that stocks are frequently sent in like manner to England : to this evidence the defendants excepted. The judge charged the jury, that the plaintiff was entitled to recover, and that the rule of damages was, the highest price that the stock bore at any time *after* the demand for permission to make the transfer on the books of the company, and *before* the commencement of the suit. The defendants excepted also to the charge of the judge, and the jury found a verdict in favor of the plaintiff for $13,536.35. The defendants asked for a new trial.

*R. Bates & S. Stevens*, for the defendants.

*S. Sherwood*, for the plaintiff.

*By the Court*, NELSON, C. J. The whole defence in this case may be said to rest upon a denial of the title of the plaintiff to the certificate of stock, together with an objection to the form of the remedy, and the measure of damages submitted by the judge to the jury.

It is contended, that the assignment on the back of the certificate of stock, from Barker to the plaintiff, and the power of attorney to Sherwood, were made without proper authority, and therefore, the demand upon the bank to enter the transfer on the books, was nugatory. The case presents a complete answer to this view. It appears that Barker endorsed his name, and affixed his seal on the back of the scrip, which was duly witnessed by Scrantum, the cashier, before it was enclosed to Bartow to obtain the $10,000. This blank was afterwards filled up by the plaintiff, by writing over the signature the transfer directly to himself and the power of attorney to Sherwood ; all which, is in strict conformity with the universal usage of dealers in the negotiation and transfer of stocks, according to the proof in the case. Even

without the aid of this usage, there could be no great difficulty in upholding the assignment : the execution in blank, must have been for the express purpose of enabling the holder, whoever he might be, to fill it up. If intended to have been filled up in the name of the first transferree, there would have been no necessity for its execution in blank ; Barker might have completed the instrument. The *usage,* however, is well established, and was fully understood by Barker, as he made the transfer in conformity to it ; and he, or those setting up a claim under him, should not now be permitted to deny its validity. The filling up, is but the *execution of an authority clearly conveyed to the holder,* is lawful in itself, and convenient to all parties, as it avoids the necessity of needlessly multiplying transfers upon the books.

It is contended, that the action should have been *case* instead of *assumpsit*. The former remedy no doubt would have been appropriate, perhaps the most appropriate, but the latter appears to be warranted by sufficient authority. *The King* v. *Bank of England, Doug.* 523. *Parbury and another* v. *the same. Ibid.* 526, *n.* 3 *Mass. R.* 381. 10 *Ibid.* 402. 17 *Ibid.* 503. 8 *Pick.* 98. 7 *Cranch,* 299. 2 *Kent's Comm.* 289, 291. *Angel & Ames on Corp.* 129. In the case of *The King* v. *The Bank of England,* the court refused a *mandamus,* to compel the bank to enter a transfer of stock on its books, on the ground, that an action would lie for a complete satisfaction, equivalent to specific relief; and afterwards *assumpsit* was brought, and the cause tried before Lord Mansfield, without any exception to the remedy. The above references will show, that that case has been very generally regarded as an authority in this country ; and that the action may be maintained against a corporation aggregate, for a default of the kind in question, upon the ground that all duties imposed on them by law, raise an *implied promise* of performance. It was not very material how the question was at first decided ; whether the remedy should be *case* or *assumpsit,* or either ; and being once settled, there can of course be no good reason for disturbing it.

The plaintiff is entitled to recover the full value of the stock. This is obvious by the view of Lord Mansfield, in the case of

Kortright *v*. Buffalo Commercial Bank.

*The King* v. *The Bank of England,* as he there observes, that an action will lie for *complete satisfaction, equivalent to the specific remedy by mandamus,* which was there sought ; and for this reason he denied the application. The counsel for the defendants contend, that the plaintiff should recover only the *damages* actually sustained, and which they insist to be no more than the excess of price in the market, over the par value which might have been realized upon a sale and transfer ; this assumes the plaintiff to be still the owner of the stock. But the defendants have denied this ownership altogether, and all right and title to control it, or the profits arising from the same. They possess the means of preventing its use or enjoyment, and if the plaintiff should now recover only the loss occasioned by his inability to sell in the market, the remedy would obviously be incomplete. He might still be nominally in possession of the stock, but the enjoyment of it denied to him, unless we are to assume, in the absence of any change of intention on the part of the bank, that a second application for a transfer will be more successful than the first. Upon this limited measure of damages, the plaintiff might be kept in continual litigation at the volition of the defendants, or be driven to abandon his property.

New trial denied.