ARNOLD *vs.* THE SUFFOLK BANK and THE UNITED STATES TRUST COMPANY.

The receiver of a bank cannot be joined as a party defendant, in an action against the bank upon a mere money demand; where no relief is prayed, or cause of action shown, against the receiver.

One who has subscribed for, or purchased, a certain number of shares of the capital stock of a bank, and paid for the same, cannot maintain an action for money had and received, against the bank, on the ground that the bank has refused to deliver to him certificates of such stock, and is therefore bound to repay him the money so paid for the stock.

But if a bank improperly refuses to permit a transfer of stock to be made, upon its books, or to issue certificates of such stock, an action of assumpsit will lie, on the ground that it is the duty of the bank to permit such transfer and to issue certificates; and that where an obligation is imposed by law, upon a corporation, a promise of performance will be implied.

In such an action, the measure of damages is, the value of the stock, or its highest price in market, at any time after the demand and refusal to permit a transfer and issue a scrip to the owner.

Where the articles of association of a bank provide that no shareholder shall be permitted to transfer his shares, or receive a dividend thereon, who shall

Arnold *v.* The Suffolk Bank.

owe the bank a debt then due; unless by consent, &c.; and authority is given, whenever such a debt is past due, to sell the stock, and apply the proceeds to pay the debt, these provisions, taken together, create a *lien* upon the stock, in favor of the bank, for the debts of the holder.

An indebtedness to the bank, of a *partnership*, of which the stockholder is a member, is within the meaning of a condition of this nature, contained in articles of association; and so long as such an indebtedness exists, the bank is not bound to consent to a transfer of the stock, or to issue certificates thereof.

APPEAL from an order made at a special term, denying a motion for a new trial. The complaint alleged that in November, 1852, the Suffolk Bank was duly organized as an incorporation for banking purposes, and that after its organization the plaintiff became the owner, and had transferred to him, ten shares of the capital stock of the said Suffolk Bank, and that on having the same transferred to him, he paid into said bank, therefor, the sum of $500; the shares being $50 each. That he thereby became entitled to a certificate therefor; that he demanded said certificate, but the bank refused to execute and deliver the same; wherefore he alleged that the bank was indebted to him in $500 and interest, and he prayed judgment therefor against said bank. He further alleged the bank had become insolvent, and that the United States Trust Company had become receiver thereof, and he asked that said company might be made defendants. The answer of the trust company denied that the plaintiff paid in full for his ten shares, or that he ever demanded a certificate therefor. It alleged that there was no period, even if said plaintiff had paid for said stock, when he was entitled to the certificate, because he was at all times indebted to the bank, or the bank held his obligations for more than the value of said stock and dividends.

On the trial, at the circuit, the jury found a verdict in favor of the plaintiff for $605. The defendants moved for a new trial, at a special term, upon a case; which motion was denied.

*E. S. Van Winkle,* for the appellants.

*S. Kissam,* for the respondent.

*By the Court,* EMOTT, J. The complaint does not ask any judgment against the trust company, or show any reason for making it a party to the suit, beyond the mere statement that it has been appointed receiver of the Suffolk Bank. It may be that the rights and obligations flowing from this make it proper or necessary to sue the receiver with, or instead of the bank, but there must be some right to relief from the receiver stated, and some relief prayed. The mere fact that A. is the assignee or the receiver of B., whether these be natural or artificial persons, will not justify a creditor of B., in bringing A. as a party into every suit against B., or where the rights and the remedies of the plaintiff, so far as appears, end with B., and the assignee or receiver is not to be affected by the suit, nor to be adjudged or compelled to do any thing for the relief of the plaintiff. I do not see that the plaintiff here shows any right to maintain this action against the trust company, or that he can be permitted to sue that company and put it to a defense, when no claim whatever is made against it. This is not an action affecting real estate, in which the trust company has an interest that is to be foreclosed. It is simply an action on a money demand, and no demand is made, or cause of action shown, against the trust company. As to the company, the complaint should have been dismissed.

The action against the bank proceeds on the theory that because the plaintiff subscribed for, or purchased, ten shares of the stock, and paid in the amount of the subscription, and the bank had refused to deliver to him certificates, the bank was therefore indebted, and bound to repay him the money which he had paid upon the subscription, as so much money had and received to his benefit.

There is neither precedent nor principle for such an action. The plaintiff does not cease to be a stockholder, nor to be the

Arnold *v.* The Suffolk Bank.

owner of these shares, and entitled to all the rights and privileges of a holder of the stock, because the corporation refuse him the certificate which is the evidence of his right. Nor does the money which he has paid to the corporation for this stock cease to belong to the bank, any more than the stock ceases to belong to him. The bank does not, therefore, hold the money for his benefit; nor is it accountable to him for it, so as to give him an action for the money. What he is entitled to is the stock. It is upon the duty of the corporation to permit a transfer, or to deliver certificates of the stock, that the law implies a promise, on the ground that where an obligation is imposed by law upon a corporation, a promise of performance will be implied. It is true that the refusal to issue certificates, or permit a transfer of the stock, may be regarded as a total denial of all ownership, and in fact a conversion of the stock, and therefore the measure of damages is the value of the stock. (*Kortright* v. *Buffalo Com. Bank,* 20 *Wend.* 91.) But the fact that it was at first doubted whether the action should be assumpsit or case, and that it was not until the time of Lord Mansfield, (*The King* v. *Bank of England, Doug.* 523, 526, *n.*) that an action of assumpsit was sustained upon such a state of facts, shows that it is the duty and obligation of the bank to the plaintiff as the owner of the stock, and not an obligation to repay him money which they have in their hands for his use and benefit, upon which the action is founded. This precedent has been followed in all the subsequent cases. (*See cases cited in* 20 *Wend.* 94.)

The only difference between this action and that which was before this court in the case last mentioned, is that here it would seem that the plaintiff purchased this stock, or the right to it, of the original subscriber, before any part of the subscription had been paid, while in that case the plaintiff was a purchaser of full paid stock. It is true the injury alleged here is, in form, the refusal to issue scrip, while there it was the refusal to permit a transfer on the books; but in

both cases the wrong complained of is the same—the denial of his right to the owner of the stock—whether the original subscriber and holder, or a person who stands in his shoes precisely, or a mere purchaser. This is a denial amounting to a conversion of the stock, reducing his possession to a mere nominal ownership, without the power of enjoyment of his property. This is the gravamen of the suit; not the mere refusal to give a certificate in a certain form, or the refusal to permit a formal authentication of a sale of the stock. It is the refusal to recognize the owner as owner ; the denial of his property, which is a breach of duty for which an action lies. It follows that the rule of damages is the same in this case as that which was approved by the court in *Kortright* v. *The Commercial Bank of Buffalo*, and which is founded on the doctrine that the plaintiff is to have complete satisfaction, equivalent to the specific remedy by mandamus, as was observed by Lord Mansfield, in *The King* v. *The Bank of England*, (*Doug.* 523.) The plaintiff must recover an equivalent for his stock—neither more nor less. The measure of damages is the value of the stock, or its highest price in market, at any time after the demand and refusal to permit a transfer and issue scrip to the purchaser or holder. If the stock has been worth more than its par value, the owner is entitled to the benefit of it. If it has been and continues worth less than its face, during all his ownership, that value is all that the plaintiff can claim. There was no proof offered here, of the value, although the defendants insisted there should be, and asked for a nonsuit because there was not. This point seems to have been overlooked by the learned judge, at the trial; or he may have adopted the view of the defendant's liability which is taken in the complaint. His charge on that point is not contained in the case, but the jury must have fallen into an error, since their verdict is for the amount of the original subscription or payment upon the stock, with interest from the time of such payment. This was an entirely incorrect view of the cause and measure of

the defendants' liability. The defendants offered to show that the plaintiff was a member of a partnership which was indebted to the bank, at all times when this stock or scrip was demanded, in an amount, then due, exceeding the par or the market value of the stock. This was objected to, and excluded, I think erroneously.

The articles of association of this bank (*Art.* 2, § 4) provided that no stockholder should be permitted to transfer his shares, or receive a dividend thereon, who should owe the bank a debt then due; unless by consent, etc. Authority is also given by the articles, (*Art.* 2, § 3,) whenever such a debt is past due, to sell the stock at the Merchants' Exchange, or at the Brokers' Board, and apply the proceeds to pay the debt. Such a condition as this, annexed to the right of ownership and control of the stock, has been upheld, whether it be created by the charter or articles of the bank, or by a by-law properly made. (*Union Bank of Georgetown* v. *Laird*, 2 *Wheat.* 390.) It is true these conditions and restrictions have generally been asserted against a purchaser of the stock, in order to secure the payment of the debts of the vendor or party making or attempting a transfer. But I think the two provisions, taken together, are intended to create, and do create a *lien* upon the stock, in favor of the bank, for the debts of the holder, and that such holder can no more assert or maintain any other rights of ownership, or establish any right to damages, from an interference with his absolute control of the stock, than he can claim the right to transfer and sell it without satisfying the debt and discharging the lien. If the state of facts which the defendants offered to prove were true, the bank would have had a right, on the very next day after issuing the certificates for this stock, to sell it, transfer it to a purchaser, and apply the money to pay the plaintiff's debt. The law would hardly call upon them, under such circumstances, to perform an act so utterly nugatory as the issuing a certificate that the plaintiff was entitled to the stock which was thus pledged for his debts,

leaving him substantially but a right to redeem it. At all events, it cannot be possible that he can be permitted to recover, in the present action, its whole value, and thus to put an end to the pledge and destroy the lien, without satisfying the debt. If the plaintiff is to recover on the ground of his ownership of the stock, and so obtains its full value from the defendants, for denying his rights and withholding his property, they should at least be permitted to show the extent of their lien, and to reduce the recovery by whatever amount they had the right to realize, at any time, by a sale of the stock.

It can make no difference that the debt was an obligation of a partnership of which the plaintiff was a member, and not the sole and individual debt of the plaintiff. The debts of a partnership, although joint, are yet the debts of all the partners, for which the individual property of all, in a proper order, is liable. It does not make this any the less the debt of the plaintiff, that it was also a debt of several other persons with him. Otherwise hardly any obligations held by banks of discount would answer the rule by which such liens upon their stockholders could be enforced; for hardly any evidences of debt held by them are the sole and single debts of any one person. All that the articles of the bank require, to create the lien, is that the shareholder should owe a debt then due. It is immaterial in what form the debt may exist, or who or how many other persons may be liable for the same amount, upon the same instrument. The debts of a partnership, at all events, are the debts of all the partners, and it would be a narrow construction of such a provision, to say that stock standing in the names of the individual partners could not be held pledged, as their other property would be liable, for such a joint debt. The evidence of such debts, offered in this case, should have been received to reduce, and if true to the extent of the offer, it would entirely have defeated, this recovery.

For these reasons the order denying a new trial should be reversed, the verdict set aside, and a new trial ordered; costs to abide the event.

