# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW JERSEY,

### MAY TERM, 1860.

~~~~~~~~~~~~~~~~~~~~~~~

THE BROADWAY BANK *vs.* THOMAS McELRATH and others.

Shares in a corporation, whose charter provides that the capital stock of the company shall be deemed personal estate, and " be transferable upon the books of the said corporation," can be effectually transferred as collateral security for a debt, as against a creditor of the bailor, who attaches them without notice of any transfer, by a delivery of the certificates thereof, together with a blank irrevocable power of attorney for the transfer thereof from the bailor to the bailee.

M. delivered to the complainants the certificates of certain stock of a corporation, accompanied by a power of attorney irrevocable for the transfer thereof, as collateral security for certain of his notes, and the renewals thereof. The charter of said corporation provided that its capital stock should be deemed personal estate, and " be transferable upon the books of said corporation : and further, " that books of transfer of stock should be kept, and should be evidence of the ownership of said stock in all elections and other matters submitted to the decision of the stockholders of said corporation." A creditor of M. then levied an attachment upon this stock. *Held,* that the transfer to the complainants was effectual as against such attaching creditor.

This case came on for final hearing on the bill, answer, and proofs. The facts fully appear in the opinion of the court.

*Gummere and Attorney General*, for complainant.

*Van Syckel and Beasley*, for defendants.

THE CHANCELLOR. The property which forms the subject of controversy consists of fifty shares of the capital stock of the Trenton Iron Company, of the par value of one hundred dollars each, standing on the books of the company in the name of McElrath. On the second of June, 1854, the certificate of the stock, accompanied by a power of attorney irrevocable for the transfer thereof, was delivered to the Broadway Bank, as collateral security on loan of four thousand dollars, obtained by McElrath from the bank, upon his individual note at four months. The loan was made upon the agreement of McElrath to deposit the stock as a collateral security for the repayment of the loan, including as well the original note as all renewals thereof. The note was renewed, and the accruing interest paid, from time to time, until the 22d of November, 1857, when the last renewal was made.

On the 24th of August, 1857, the Hunterdon County Bank sued out of the Supreme Court of this state a writ of attachment against the estate of the said McElrath, as a nonresident debtor, by virtue of which the stock in question was attached as the property of McElrath. Judgment having been rendered in favor of the plaintiff in attachment, and also in favor of sundry applying creditors, the auditors in attachment were proceeding to make sale of the stock in question to satisfy those judgments when they were restrained by an injunction issuing in this cause. The complainants insist that they have an equitable lien upon the stock for the payment of the debt for which it was hypothecated as security. The defendants claim that they have acquired a valid title to the stock at law and in equity by virtue of the attachment.

The stock, irrespective of the complainants, was undoubtedly, under the provisions of the statute, the sub-

ject of attachment. The judgment at law has established the claims of the plaintiff and the applying creditors in attachment. The validity of the proceedings under the attachment are not drawn in question. The defendant's right to the property is unquestioned, except so far as it conflicts with the prior rights of the complainants.

By the 5th section of the charter of the Trenton Iron Company, approved February 16th, 1847, (*Pamph. Laws* 61) it is enacted that "the capital stock of the said corporation shall be deemed personal estate, and be transferable upon the books of the said corporation;" and by the 9th section of the charter, it is further enacted, "that books of transfer of stock shall be kept, and shall be evidence of the ownership of said stock in all elections and other matters submitted to the decision of the stockholders of the said corporation."

Independent of the provisions of the charter, the stock of an incorporated company is deemed personal estate, and may be transferred by a certificate of stock accompanied by a power of transfer. *Angell & Ames on Corp.* § 564.

And where it is provided by the charter or by-laws that the stock shall be transferred only upon the books of the corporation, there is a decided weight of authority in support of the position, that a *bona fide* transfer by delivery of the certificate is nevertheless valid as between vendor and vendee, that the equitable title passes by such transfer, and that the claim of the vendee is good in equity against the claim of an execution or attaching creditor of the vendor: such provision, whether by charter or by law, is regarded as designed to protect the interests of the corporation, and as applying solely to the relation between the corporation and its stockholders. Its only office is held to be equivalent to that of the provision contained in the ninth section of the charter of the Trenton Iron Company, *viz.* "to afford evidence of the ownership of the stock in all elections and other matters submitted to the decision of the corporation," including all questions

as to the ownership of the stock as between the corporation and its members. *Angel & Ames on Corp.* [354; *Bank of Utica* v. *Smalley,* 2 *Cowen* 770 ; *Gilbert* v. *Manchester Iron Co.,* 11 *Wend.* 627 ; *Kortright* v. *Buffalo Commercial Bank,* 20 *Wend.* 91; same case in error, 22 *Wend.* 348; *Quiner* v. *Marblehead Insurance Co.,* 10 *Mass.* 476; *Union Bank of Georgetown* v. *Laird,* 2 *Wheat.* 390; 3 *Howard* 513; *Stebbins* v. *Phœnix Fire Insurance Co.,* 3 *Paige* 361; 3 *Binney* 394; *Grant* v. *Mechanics Bank,* 15 *Serg. & R.* 143; *Bank of Kentucky* v. *Schuylkill Bank,* 1 *Parsons* 247; *United States* v. *Cutts,* 1 *Sumner* 133.

There is not an entire uniformity of authority upon the question, whether a transfer or pledge of stock as collateral security without a transfer upon the books of the company, as required by the charter, will protect the holder against the claims of an attaching creditor, though the weight of authority is decidedly in favor of the right of the assignee.

It is the well settled rule in New York, where this contract was made, and where the contracting parties had their domicil at the time of the contract, and the pledge of the stock by McElrath to the bank.

It was so expressly decided in this state long prior to the date of that contract. *Rogers et al.* v. *Stevens,* 4 *Halst. Ch.* 167.

So far as judicial determination could settle the question, it was settled prior to the pledge of this stock, both in the state where the contracting parties had their domicil and in the state where the corporation whose stock was transferred was chartered and transacted its business. The parties to the contract may fairly have relied upon the law, as thus settled, for the protection of their rights. It is of the utmost importance that questions so extensively and vitally affecting the rights of the business community should be regarded as settled by judicial decision, and not liable to be disturbed, except for the most cogent reasons. Upon the faith of decisions already made upon this very

point, contracts have doubtless been entered into and securities taken to a very large amount. Whatever might be my conclusion as to the true construction of the statute, were the question now for the first time agitated, it would be alike unwise and unjust to overturn or impair rights acquired upon the faith of recognised legal principles.

I think it clear moreover, whatever might be the strict legal interpretation of the provision in question, that the legislature never designed it to impair the validity of a transfer of stock, as between the parties making it. It was not intended to introduce a new mode of acquiring title to stocks, much less to operate as a registry law, by furnishing conclusive evidence to the public of the ownership of the property. If such had been the design, it might have been expected that the legislature would have required that the books of transfer should be at all times open to public inspection, and the record, not in certain specified cases merely but in all cases, made evidence of ownership.

Nor does sound policy require such construction to be given to the act. The pledge of stocks as collateral security has become a prevalent, and to the borrower, especially, an advantageous mode of effecting loans. In manufacturing companies especially, where the business of the company is carried on by the stockholder, and where his capital is mainly or exclusively vested in the stock, and employed in the active operations of business, the pledge of stocks affords the most ready and advantageous mode of effecting loans for the demands of business. To require a transfer of the stock to the lender as security for the loan against the right of attaching or execution creditors will at once destroy the value of the security, or compel the borrower to divest himself of his character as corporator to forfeit his control of the business of the corporation, of his right to dividends, and of all his other rights as a stockholder in the corporation. Why should the

owner of stocks be deprived of the privilege of mortgaging or pledging his stock for the security of a loan, without stripping himself of all his rights of ownership, more than the owner of any other property ?

The objection is, that it will open the door to fraud, and deprive an execution or attaching creditor of the means of ascertaining the real ownership of the stock. It is worthy of notice that this clause requiring a transfer of stock on the books of the company was inserted in numerous charters long before the stock was made the subject of execution. But the objection, as applied to a transfer of stock, is of less weight than against a chattel mortgage, the chattel remaining in the hands of the mortgagor, which is held to be a valid security. *Runyon* v. *Groshon,* 1 *Beasley* 86.

The transfer book is not the only evidence of the ownership of stock. The certificate, which has always been deemed *prima facie* evidence of ownership, is the only evidence in possession of the owner, and where there has been no transfer, is the only recognised evidence of title.

It is urged that the contract for the pledge of this stock was executory merely; that it does not purport to transfer the ownership of the shares, but simply gives an authority to transfer upon failing to pay the debt: and hence it is further argued, that the stock cannot be held as a pledge, because that requires a transfer of possession. The contract between the parties was in no sense executory. It was fully executed according to the intention of the parties. The absolute ownership of the stock, it is true, was not transferred, nor was it intended it should be. The spirit and design of the contract was that the legal ownership of the stock should continue in McElrath; that he should remain a member of the corporation, with the right to receive the dividends upon the stock, to vote at all elections, and with all other rights pertaining to him as a stockholder and member of the company, and that the bank should hold the stock as collateral security for

C*

the payment of the loan, with the absolute and irrevocable right of transferring the legal ownership upon failure to pay the debt. The same objection existed in many of the reported cases, where the right of the party holding the certificate of stock as evidence of his claim was sustained against the claims of attaching or execution creditors. 3 *Binney* 394; 4 *Halst. Ch.* 167.

Such a certificate annexed to or accompanying a blank power of attorney we cannot doubt, not only according to the understanding of men in business, but upon well settled principles of law, passes by delivery an equitable title to a *bona fide* purchaser; nor can such purchaser be justly prevented from converting his equitable into a legal title by filling up and exercising the power, whenever he is entitled to do so by the nature and terms of the contract, under which the certificates were delivered to him. When the stock is sold absolutely his right then to perfect his title is immediate; when it is hypothecated, the right accrues when the debt meant to be secured becomes due and remains unpaid. Per ACKLEY, C. J., in *Fatman* v. *Lobach*, 1 *Duer* 361.

It is obvious moreover, that so far as regards the legal ownership of the stock, if the transfer upon the books of the company alone can constitute legal ownership, that the contract of sale is as fully executed by delivering the certificate, with the power of immediate transfer on the books of the company, as by a formal assignment accompanying the certificate.

The holder of a certificate of shares of stock, accompanied by an irrevocable power of attorney to transfer them, is the apparent owner, and when he is the holder for value without notice his title cannot be impeached. *Leavitt* v. *Fisher*, 4 *Duer* 1.

Aside from the general principles by which I think the case must be controlled, it is worthy of notice that the charter of the company, the stock of which is here the subject of controversy, is somewhat variant from many of

those which have formed the subject of adjudication. In the case of *Fisher* v. *The Essex Bank*, 5 *Gray* 373, the act of incorporation declared that the stock of the bank should be transferable *only* at its banking house and on its books. The court say that the word "only" carries an implication, as strong as negative words could make it, that the transfer should be in no other mode. It was not to prescribe one mode, leaving others unaffected; it made that mode exclusive. The charter of the Trenton Iron Company contains no such exclusive language. It declares merely that the stock shall be transferable on the books of the company, and further provides that the books of transfer shall be evidence of ownership, as between the company and its stockholders. If the transfer on the books was designed to be the only evidence of ownership, the latter provision would seem to be unnecessary.

The right of the bank is in no wise prejudiced by the fact, that they appeared as applying creditors under the attachment, and presented their claim to the auditors.

The *bona fides* of their claim is not questioned, and they are entitled to the stock in question clear of the lien of the attachment.

Decree accordingly.