## Case No. 9,286.

### MATTHEWS v. MASSACHUSETTS NAT. BANK.

[Holmes, 396; [1] 1 Am. Law T. Rep. (N. S.) 512; 10 Alb. Law J. 199; 14 Am. Law Reg. (N. S.) 153; 20 Int. Rev. Rec. 110; 1 Cent. Law J. 469; 22 Pittsb. Leg. J. 38; 6 Leg. Gaz. 308.]

Circuit Court, D. Massachusetts. Sept. 3, 1874.

CONTRACTS—GUARANTY—STOCK TRANSFER — GENUINENESS—BANKS—TRANSFER BY CASHIER.

1. It is within the general authority of the cashier of a bank to sign, in its behalf, a blank transfer upon a certificate of stock in the name of the bank, held by it as collateral security for a loan, and deliver the certificate to the pledgor on payment of the loan.

[Cited in Windram v. French, 151 Mass. 550, 24 N. E. 914.]

[Cited in Com. v. Reading Sav. Bank, 133 Mass. 22.]

2. The signing a transfer in blank on a certificate of stock is a warranty of the genuineness of the certificate.

3. A stock certificate originally for two shares of stock in the name of C, which had been by him fraudulently altered so as to purport to be for two hundred shares in the name of a certain bank as collateral, was received in good faith by the bank from C, as collateral security for a loan to him. On payment of the loan by C, the cashier of the bank, as such, signed a transfer in blank upon the back of the certificate, and delivered it to C. Afterwards, the plaintiff in good faith received the same certificate from C, as collateral security for a loan then made to him. The plaintiff's loan was not paid. On suit by him against the bank to recover the amount of his loss, held, that the bank was liable.

Action at law [by Nathan Matthews]. The case was heard by the court upon an agreed statement of facts, the material parts of which are stated in the opinion. The first count in the declaration was as follows: "And the plaintiff says the defendant was possessed of a certain instrument in writing, purporting to be a certificate of stock issued to the defendant by the Boston and Albany Railroad Company, a copy whereof is hereto annexed, and pretended to be entitled thereunder to two hundred shares in the capital stock of the said Boston and Albany Railroad Company; and the defendant, in consideration of the sum of twenty-five thousand dollars paid to defendant by the plaintiff, on or about the twenty-eighth day of April, 1873, assumed the right to sell, and did sell, and agreed to deliver to the plaintiff, two hundred shares in the capital stock of the said Boston and Albany Railroad Company of the par value of one hundred dollars each, said stock being then and now worth in the market more than its par value; and, as evidence of such sale, and for the alleged purpose of transferring such stock, assigned in writing, and transferred and delivered to the plaintiff, said pretended certificate of stock, and thereby warranted its genuineness; and that the defendant was proprietor of the shares of stock therein described, and

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

could convey a good title thereto by virtue of said assignment. A copy of said instrument of assignment is hereto annexed, the same having been indorsed on said pretended certificate.[2] But the plaintiff says that the defendant did not own at the time of said sale, and of the assignment of said pretended certificate, the two hundred shares of stock so sold and agreed to be delivered by the defendant to the plaintiff, and that the pretended certificate so purporting to have been issued to the defendant by said Boston and Albany Railroad Company was never in fact issued to the defendant by said company, and was not genuine, but was false, forged, and void, and the defendant was not the proprietor of the shares of stock therein described, and that the transfer and assignment of said pretended certificate conveyed no right or title in or to any shares of stock to the plaintiff, and was of no value, and that the plaintiff has received no consideration for the money so paid by him to the defendant. Wherefore, the defendant owes the plaintiff said sum of twenty-five thousand dollars, so paid by the plaintiff to the defendant, with interest thereon, but has never paid the same or any part thereof, though payment thereof has been duly demanded."

Dwight Foster and G. W. Baldwin, for plaintiff.

The defendant corporation, by signing the blank form of transfer, so far warranted the genuineness of the certificate that it is estopped from setting up the forgery as a defence to this action. This is well settled, as respects the transfer by indorsement of forged notes, checks, bills, and other negotiable instruments. State Bank v. Fearing, 16 Pick. 533; Hortsman v. Henshaw, 11 How. [52 U. S.] 184; Bank of U. S. v. Bank of Georgia, 10 Wheat. [23 U. S.] 333; Redf. & B. Lead. Cas. 650; Story, Prom. Notes, 380; Chit. Bills 242; Bigelow, Estop. 428, and cases cited. Certificates of stock, "although neither in form or character negotiable paper, approximate to it as nearly as possible." Bank v. Lanier, 11 Wall. [78 U. S.] 377. The legal title passes by an assignment of the certificate and delivery, although there is no transfer upon the books of the corporation. McNeil v. Tenth Nat. Bank, 46 N. Y. 325. And certificates so assigned are articles of commerce, passing from hand to hand like commercial paper. Leitch v. Wells, 48 N. Y. 585. The form of assignment printed on the back of the certificate, if signed in blank by the stockholder to whom the same was issued, may be filled up by a subsequent purchaser of the stock. Bridgeport Bank v. New York & N. H. R. Co., 30 Conn. 273; In re Tahiti Cotton Co., L. R. 17 Eq. 279; Lickbarrow v.

Mason, 2 Term R. 63. This establishes a direct relation between the last holder and the original owner of the certificate, and gives to the transaction the effect of negotiability, so far as is needed to justify this action.

The plaintiff makes out a prima facie case by putting in evidence a certificate purporting to stand in the name of the defendant, and duly transferred by it to him, for which he has paid in good faith a valuable consideration, and which turns out to be worthless. When that is done. the defendant cannot set up the falsity of its own representations by way of answer and defence, "as against them the plaintiff's case, though defective if the whole truth could come out, shall prevail." Gibson v. Minet, 1 H. Bl. 611. "Where the instrument is not negotiable, the maker may be affected by an estoppel in pais, if it be transferred upon his representation of its validity." Mechanics' Bank v. New York & N. H. R. Co., 13 N. Y. 638. It is upon this representation that this action is founded, and not upon the forged certificate as the instrument containing the contract. The plaintiff's right of action rests on equitable grounds. He has advanced money in good faith upon the security of a forged title represented by the defendant to be genuine, and, although the forgery was known to neither, the loss should fall on the person who, without due caution, took the instrument from the wrong-doer, and afterwards gave it currency. Bank of Commerce v. Union Bank, 3 Comst. [3 N. Y.] 230; Cabot Bank v. Morton, 4 Gray, 156. "It is not necessary that the party should design to mislead. If the act was calculated to mislead. and has actually misled another, acting in good faith, it is enough." Manufacturers & Traders' Bank v. Hazard, 30 N. Y. 226. Had the bank desired to limit its liability, the name of Coe should have been inserted. By neglecting to do this, the case is brought within the rule that "where one of two innocent persons must suffer, he who has put it in the power of another to do the wrong must suffer." Wood v. Steele, 6 Wall. [73 U. S.] 82. It is not necessary that the false representation. which is the foundation of this suit, should have been made to the plaintiff directly. It is sufficient "if it is made to the public generally, with a view to its being acted on, and the plaintiff, as one of the public. acts on it, and suffers damage thereby." Richardson v. Silvester, L. R. 9 Q. B. 36; Swift v. Winterbotham, L. R. 8 Q. B. 253; Gerhard v. Bates, 2 El. & Bl. 476.

The essential principle established by the authorities is, that one who affixes his signature thereby warrants or authenticates the genuineness of the instrument to which it is affixed. Van Duzer v. Howe, 21 N. Y. 531; Merchants' Bank v. State Bank, 10 Wall. [77 U. S.] 645. 650; Garrard v. Haddan, 67 Pa. St. 82; Dair v. U. S., 16 Wall. [83 U. S.] 4; Spriggs v. Bank Mt. Pleasant, 10 Pet. [35 U. S.] 264.

---

[2] "For value received the undersigned hereby transfer to ——— of ———, ——— shares of the capital stock of the Boston and Albany Railroad Company. H. K. Frothingham, Cashier. Dated at Boston, April 28, 1873."

Liability for injury sustained by reason of representations, carelessly made, which have proved false, has been enforced. New York & N. H. R. Co. v. Schuyler, 34 N. Y. 30; Thomas v. Winchester, 6 N. Y. 397; Lobdell v. Baker, 3 Metc. [Mass.] 469; Preston v. Mann, 25 Conn. 131; Slim v. Croucher, 1 De Gex, F. & J. 518; Pickard v. Sears, 6 Adol. & E. 474; Ramshire v. Bolton, L. R. 8 Eq. 294; Hooker v. Hubbard, 97 Mass. 175; Collen v. Wright, 8 El. & Bl. 647; 2 Kent, Comm. 490, and note; 1 Smith, Lead. Cas. 270.

The fact that the signature of the defendant was given for the purpose of transferring title to the instrument, establishes a contract of sale between the defendant and the plaintiff, and brings the case within authorities which hold that the vendor of a specific chattel is responsible if the article be not a genuine article of the kind which the seller represents it to be. Gompertz v. Bartlett, 2 El. & Bl. 854; Jones v. Ryde, 5 Taunt. 488; Gurney v. Womersley, 4 El. & Bl. 133; Henshaw v. Robins, 9 Metc. [Mass.] 86; 2 Kent, Comm. 480, and note.

The defendant was negligent: 1. In trusting to Coe, the borrower, to obtain a transfer to them, from the Boston and Albany Railroad Company, of the two hundred shares of stock, instead of sending, themselves, to the office of the corporation to obtain the certificate. 2. In delivering the forged instrument to Coe, authenticated by a transfer signed in blank; thus giving it a currency and negotiability which it would not have possessed had Coe's name been inserted in the form of transfer, and putting it in his power to commit the fraud, upon which this suit is founded. The plaintiff was not negligent. He had a right to assume upon receiving this certificate, authenticated by the signature of the bank, that the defendant had obtained it from the railroad company in the usual way, which would have prevented the possibility of forgery or fraud in the body of the instrument. Espy v. Bank of Cincinnati, 18 Wall. [85 U. S.] 604; Lickbarrow v. Mason, 2 Term R. 63, and note in Smith, Lead. Cas. 1039.

Joshua P. Converse and Edward A. Kelly, for defendant.

The loan by the bank to Coe, and his delivery of the forged certificate of stock, as collateral, to the bank, was a transaction of which the plaintiff had notice; and the statement on the face of the certificate that it was held by the bank as collateral, was notice that the bank was not in fact the absolute owner, and that it was held only in pledge. Wilson v. Little, 2 Comst. [2 N. Y.] 443; 2 Kent, Comm. 579; 4 Kent, Comm. 138; Allen v. Dykers, 3 Hill, 593; Dykers v. Allen, 7 Hill, 497; White v. Platt, 5 Denio, 269; Newton v. Fay. 10 Allen, 505; Gen. St. Mass. c. 123, § 62; Id. c. 68, § 14. The certificate held by the bank having been given it by Coe as a pledge, when he paid the debt,

the restoration of the certificate to him vested in him all the rights which the bank ever had. The possession of the certificate by Coe, after notice of its having been held in pledge, was notice to Matthews that the debt for which it had been held in pledge had been paid. The transfer in blank created no liability or obligation on the part of the bank to Matthews. The act of the cashier in signing and transferring the certificate to Coe was performed with the intention of restoring the pledge to Coe in discharge of the duty of the bank as pledgee, after the purposes of the pledge were answered, and not with any purpose of a sale of the certificate, or the stock supposed to be represented by it; and no contract of sale resulted from it. Langton v. Waite, 17 Wkly. Rep. 475; Ketcham v. Stevens, 19 N. Y. 499; Williamson v. Berry, 8 How. [49 U. S.] 685. By the statute of frauds the transfer in blank is void. Browne, St. Frauds, § 372; Champion v. Plummer, 1 Bos. & P. (N. R.) 252. When Coe paid the debt and took back what he had pledged, his right became as absolute and complete as when the pledge was given; and if he could not have sued the bank, it is submitted that he could not by a delivery to another person transfer a right of action against the bank. Certificates of stock are not negotiable instruments, and the transferees of such certificates acquire the same rights which their assignors had, and no more, and deal in relation to them at their peril. Mechanics' Bank v. New York & N. H. R. Co., 13 N. Y. 599, 622; McNeil v. Tenth Nat. Bank of New York, 55 Barb. 59; Bush v. Lathrop, 22 N. Y. 535; Mangles v. Dixon, 18 Eng. Law & Eq. 82, 95; Hil. Sales (3d Ed., 1869) 594, and authorities in note; Fisher v. Essex Bank, 5 Gray, 377; Athenaeum Life Assur. Soc. v. Pooley, 3 De Gex & J. 294. They are not in the nature of letters of credit, on the faith of which any one might act. Mechanics' Bank v. New York & N. H. R. Co., 13 N. Y. 629–631.

The doctrine that the sale of goods carries with it an implied warranty of title or genuineness cannot apply here. 1. The doctrine is intended to protect those who otherwise have no means of protecting themselves. Did the bank covenant with Coe that the certificate forged by him was genuine? 2. It is not like a covenant running with land, and good in the hands of third persons. 3. The doctrine applies only where the vendor is in possession, and sells goods as his own. 2 Kent, Comm. 478, and note (Holmes's Ed.); McCoy v. Artcher, 3 Barb. 323; Edick v. Crim, 10 Barb. 445; Baxter v. Duren, 29 Me. 434; Morley v. Attenborough, 3 Wellsb., H. & G. 508; Medina v. Stoughton, 1 Salk. 210; Ormrod v. Huth, 14 Mees. & W. 664; Emerson v. Brigham, 10 Mass. 197; 1 Pars. Cont. 457, 458; Huntington v. Hall, 36 Me. 501, and cases cited; Whitney v. Heywood, 6 Cush. 82, 86. 4. The bank never

was in possession of any thing but a forged certificate; and this Matthews has received. 5. The transfer is in the nature of a chose in action; and Matthews stands in the same situation as his assignor, and no covenants of warranty of title or genuineness are implied. Eaton v. Mellus, 7 Gray, 566. 6. Matthews received the certificate from Coe with constructive notice that the relation of trustee and cestui que trust had existed between the bank and Coe, which imposed upon him the duty of inquiry as to its character and limitations. And whatever is sufficient to put a person of ordinary prudence upon inquiry is constructive notice of every thing to which that inquiry might have led. Freeman v. Harwood, 49 Me. 195; Newton v. Fay, 10 Allen, 507; Shaw v. Spencer, 100 Mass. 390. 7. The transfer was of the identical certificate delivered to the bank, in performance of its duty as pledgee, upon the payment of the debt for which it was pledged, and was not a transfer of shares of stock generally. Westropp v. Solomon, 8 C. B. 345.

The declaration is in contract; and there is no allegation in the statement of facts that Matthews ever paid, or that the bank ever received, any thing for the alleged contract of sale. The amount advanced by Matthews was a loan to Coe; and the only money received by the bank was the debt paid to it by Coe; and neither was a legal consideration for a contract with the bank. Smith v. Bartholomew, 1 Metc. [Mass.] 278. The cashier had no authority or right to bind the bank to pay money upon any contract alleged, because: 1. He never had authority by virtue of his office, nor any authority delegated by the directors. Bank of U. S. v. Duren, 6 Pet. [31 U. S.] 51; U. S. v. City Bank of Columbus, 21 How. [62 U. S.] 356; Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676. 2. There was no consideration for the alleged contract, and the same was therefore void.

The claim against the bank is too remote. Anthony v. Slaid, 11 Metc. [Mass.] 290; Brown v. Cummings, 7 Allen, 507. Damage without fraud, or fraud without damage, will not sustain an action. Randall v. Hazelton, 12 Allen, 412; Stone v. Denney, 4 Metc. [Mass.] 151.

The bank having no right to sell the stock, as the debt had been paid, the cashier could not make a sale. As neither the bank nor the cashier could sell the stock, the act of the cashier in signing the transfer in blank could not operate as an estoppel. Lowell v. Daniels, 2 Gray, 161; Bigelow, Estop. 480. There was no intent on the part of the bank to induce Matthews to act on the faith of the alleged representation. Plumer v. Lord, 9 Allen, 458. Matthews was a stranger to the alleged representation, and, therefore, it is no estoppel in his favor. Mechanics' Bank v. New York & N. H. R. Co., 13 N. Y. 638, 639. As the cashier had no right

to sell the stock to the plaintiff, the alleged negligence in doing what he had no right to do could not bind the bank. Foster v. Essex Bank, 17 Mass. 479.

Matthews had no right to fill up the blank transfer, so as to make it appear to be a contract of sale to himself. 1. Because he dealt only with Coe, and derives his title from him and not from the bank. Ketcham v. Stevens, 19 N. Y. 499. 2. Because he cannot make a contract by which the bank is bound, which he knew, or was bound to know, is in opposition to its wishes and intentions. 3. Because the bank and Matthews were both pledgees of Coe, and the relation of vendor and vendee could not, and did not, exist between them.

There was no negligence on the part of the bank in receiving the certificate from Coe as a pledge for a loan to him, nor in the mode of transfer to him. The loss sustained by Matthews can be traced to his want of prudence and care in dealing with Coe. Gloucester Bank v. Salem Bank, 17 Mass. 42; Maule, J., in Westropp v. Solomon, 8 C. B. 345; Shaw v. Spencer, 100 Mass. 391; Boylston Nat. Bank v. Richardson, 101 Mass. 290; Bank of U. S. v. Bank of Georgia, 10 Wheat. [23 U. S.] 333.

If, under the peculiar circumstances of this case, no fault or negligence is imputable to either party, the loss must remain with Matthews where the course of business has placed it. Gloucester Bank v. Salem Bank, 17 Mass. 42. If it is claimed that the cashier was negligent or careless in the mode of transfer, it is submitted that the loss or injury sustained by the plaintiff is not the direct and immediate consequence of the alleged negligent act of the cashier. The felony of Coe in uttering the forged certificate, which he knew to be forged, and the laches of the plaintiff, were the direct and immediate causes of the loss to the plaintiff. Salem Bank v. Gloucester Bank, 17 Mass. 31; Hatch v. Searles, 2 Smale & G. 147.

SHEPLEY, Circuit Judge. The defendant, the Massachusetts National Bank, loaned to one James A. Coe twenty-two thousand dollars, payable on call with interest, taking from him his memorandum of indebtedness for that sum, with, as collateral security therefor, what purported to be a certificate of two hundred shares of the capital stock of the Boston and Albany Railroad Company issued to said Massachusetts National Bank, as collateral. This instrument was originally a genuine certificate for two shares of the capital stock of the Boston and Albany Railroad Company issued to H. E. Coe, but by false and forged erasures and interlineations it had been so altered as to purport to be a certificate for two hundred shares of its stock issued by said railroad corporation to the Massachusetts National Bank, as collateral.

The bank received the said certificate in

good faith and without any suspicion of its fraudulent character, and in supposed fulfilment of the promise of James A. Coe to give as security for the loan aforesaid two hundred shares of the capital stock of said railroad corporation. Subsequently, upon payment by said Coe to the bank, he received back his memorandum of indebtedness; and the cashier of the bank, for the purpose and with the intention of restoring the collateral to Coe, returned to him the fraudulent certificate, with the usual printed form of transfer on the back thereof, signed by H. K. Frothingham, cashier of said bank, in blank.

About two weeks after the surrender by the bank of this certificate to Coe with the transfer in blank of the cashier on the back of it, the plaintiff, Matthews, pursuant to his agreement to loan Coe twenty-five thousand dollars on call with interest, received from Coe, in good faith, the said fraudulent certificate with the blank assignment on the back thereof, supposing the same to be a genuine certificate for two hundred shares of said stock issued by the corporation and duly transferred and assigned so as to enable him to obtain a new certificate therefor in his own name; and on receipt thereof loaned the sum of twenty-five thousand dollars. The signature of the cashier was well known to Matthews, who correctly supposed the signature on the blank assignment to be genuine. Coe was tried and convicted for obtaining money by false pretenses; and indictments for forgery are now pending against him, and he has been declared bankrupt. The next day, or very soon after the day when the money was loaned by Matthews, the fact first became known to plaintiff and defendant of the fraudulent alteration of the certificate before it came into possession of defendant, and plaintiff thereupon notified the bank that he should hold it responsible for any loss sustained by him by reason of the premises. This action is brought for the recovery of the damages thus sustained.

The real question presented in the case is, whether the bank by signing the blank transfer has so far warranted the genuineness of the certificate that it is estopped from setting up the forgery as a defence to this action.

Defendant denies that the cashier had authority or right to bind the bank by the contract declared on. Cashiers of a bank are held out to the public as having authority to act according to the general usage, practice, and course of business conducted by the bank. Their acts, within the scope of such usage, practice, and course of business, will in general bind the bank in favor of third persons possessing no other knowledge. Morse v. Massachusetts Nat. Bank [Case No. 9,857]; Minor v. Mechanics' Bank, 1 Pet. [26 U. S.] 70; Merchants' Bank v. State Bank, 10 Wall. [77 U. S.] 604. One of the ordinary and well-known duties of the cashier of a bank is the surrender of notes and securities upon payment; and his signature to the necessary transfers of securities or collaterals, when in the form of bills of exchange, choses in action, stock certificates, or similar securities for loans, which are personal property, is an act within the scope of the general usage, practice, and course of business in which cashiers of a bank are held out to the public as having authority to act. Undoubtedly the ordinary duties of a cashier do not comprehend the making of a contract which involves the payment of money, without an express authority from the directors, unless it be such as relates to the usual and customary transactions of the bank. But the transfer of certificates of stock held as collateral is certainly one of the usual and customary transactions of banks, and the public would be no more likely to require evidence of a special authority to the cashier to make such transfer than of a special authority to draw checks on other banks, or to perform any other of the daily duties of his office.

The signature of the cashier must therefore be considered as the signature of the bank, and the question returns, whether such blank assignment on the back of the certificate by the bank be so far a warranty of the genuineness of the certificate that the bank is estopped from setting up the forgery as a defence. In the case of forged negotiable instruments, it is well settled that the indorser warrants that the instrument itself and the antecedent signatures thereon are genuine. Story, Prom. Notes, § 135; State Bank v. Fearing, 16 Pick. 533; Hortsman v. Henshaw, 11 How. [52 U. S.] 183; Critchlow v. Parry, 2 Camp. 182; Canal Bank v. Bank of Albany, 1 Hill, 287. The indorser's liability in these cases is properly placed upon the ground of estoppel. "This proceeds," says Judge Story, "upon the intelligible ground that every indorser undertakes that he possesses a clear title to the note deduced from and through all the antecedent indorsers, and that he means to clothe the holder under him with all the rights which by law attach to a regular and genuine indorsement against himself and all the antecedent indorsers. It is in this confidence that the holder takes the note without further explanation; and if each party is equally innocent, and one must suffer, it should be the one who has misled the confidence of the other, and by his acts held out to the holder that all the indorsements are genuine, and may be relied on as an indemnity in case of the dishonor thereof." This is a statement of the grounds upon which the rule of law rests as applicable to negotiable instruments, but the reasoning would seem to apply with equal force and pertinency to the case of a transfer of a certificate of stock by indorsement in blank. Stock certificates are sold in open market like other securities, and form the basis of commercial transactions. In the language of Davis, J., in Bank v. Lanier, 11 Wall. [78 U.

S.] 377: "Although neither in form nor character negotiable paper, they approximate to it as nearly as practicable." In Leitch v. Wells, 48 N. Y. 613, it is said: "Since the decision of the case of McNeil v. Tenth Nat. Bank, 46 N. Y. 325, certificates of stock, with blank assignments and powers of attorney attached, must be nearly as negotiable as commercial paper." The common practice of passing the title to stock by delivery of the certificate, with the blank assignment and power, has been repeatedly proved and sanctioned in cases which have come before the courts in New York. In New York & N. H. R. Co. v. Schuyler, 34 N. Y. 41, the rights of parties claiming under such instruments were fully recognized by the court, and such mode of transfer was shown to be the common practice of the city of New York. It is well settled that the form of assignment printed on the back of stock certificates, when signed in blank, may be filled up by a subsequent purchaser of the stock. Kortright v. Commercial Bank of Buffalo, 20 Wend. 91, and 22 Wend. 348; Bridgeport Bank v. New York & N. H. R. Co., 30 Conn. 273. The certificate in this case, as it came from the bank, contained on the same piece of paper. and on the back of the certificate, a blank assignment, which was all that was necessary to transfer the title of the stock as between the parties. The defendant must, therefore. be held to have intended and agreed that whoever should present the certificate so issued from the bank, with the assignment executed in blank, should be entitled to fill up the blanks with his own name, and to have a transfer of the stock made to himself on the books of the company. The certificate accompanied with the transfer, executed in blank, has a species of negotiability of a peculiar character, but one well recognized in commercial transactions and judicial decisions, and absolutely essential in the usage and necessities of modern commerce to make such certificates available in commercial transactions. Even when such blank assignments, or powers of attorney to transfer stock, are under seal, the blanks may be filled up according to the agreement of the parties at the time. Bridgeport Bank v. New York & N. H. R. Co., 30 Conn. 274, 275; Redf. R. R. § 35, and cases cited. The decisions to the contrary in the English courts have not been followed in this country, and they were influenced not merely by a rigid adherence to the technical rules of the common law in relation to instruments under seal, but by the policy of the stamp system. But the case of Walker v. Bartlett, 36 Eng. Law & Eq. 368, and later English decisions, recognize the validity of blank transfers of stock, and that such transfers of stock impose upon the holder of them the obligation to pay calls upon the shares while they remain his property. In Kortright v. Commercial Bank, 20 Wend. 94, speaking of the filling up of a blank transfer of stock and power of attorney, Nelson,

C. J., after stating that this is in strict conformity with the universal usage of dealers in the negotiation and transfer of stocks according to the proof in the case, goes on to say: "Even without the aid of this usage, there could be no great difficulty in upholding the assignment. The execution in blank must have been for the express purpose of enabling the holder, whoever he might be, to fill it up. If intended to have been filled up in the name of the first transferee, there would have been no necessity for its execution in blank; Barker might have completed the instrument." The right to fill the blank in a blank transfer of stock is recognized by the supreme court of Massachusetts in Sewall v. Boston Water Power Co., 4 Allen, 277.

Matthews clearly had the right, having advanced the sum of twenty-five thousand dollars upon the supposed security of this blank assignment of stock, to fill up the blank with his own name and with the place of his residence, and whatever was necessary to make the instrument complete as an assignment and transfer to him of the shares described in the certificate. The case finds that the cashier signed the assignment in blank for the purpose and with the intention of restoring the pledge to Coe. But even if he went further, and agreed with Coe that Coe should fill the blank with his own name, such private understanding between him and Coe would not have affected the rights of third parties who parted with their property in good faith without negligence, upon the faith of the certificate of the cashier that the bank undertook to assign, and did assign, to whoever might be the lawful holder of the instrument, the amount of stock described therein. As above quoted from Nelson, C. J., "If intended to have been filled up in the name of the first transferee, there would have been no necessity for its execution in blank." Frothingham "might have completed the instrument." What possible explanation can be given of the course of the cashier in giving to Coe an assignment in blank rather than a transfer to Coe himself, other than to enable Coe to dispose of the certificate so that the holder could take his title directly from the bank, and that the instrument might be used according to the well-known usage of dealing with stock certificates, passing from one purchaser to another without the inconveniences and delays consequent upon manifold transfers on the records of the corporation? If the bank intended to limit the assignment to a particular assignee, or to a less number of shares than the number described in the certificate, the limitation should have appeared in the assignment. The assignment in blank purports to assign what is described in the certificate to the lawful holder, whoever he may be, who may fill the blank. The signature is given for the purpose of transferring title; and whenever the blank is filled, a contract of sale is established between the party who

has signed the blank assignment and the person whose name is rightfully filled in as assignee.

It is contended in behalf of the bank that the transfer in blank created no liability or obligation on the part of the bank to Matthews, because the circumstances under which the certificate was received by the bank and surrendered to Coe indicate clearly that the act of the cashier in signing and transferring the certificate to Coe was performed with the intention of restoring the pledge to Coe in discharge of the duty of the bank as pledgee after the purposes of the pledge were answered, and not with any purpose of a sale of the certificate or the stock supposed to be represented by it. But there is nothing in the case to show any knowledge on the part of Matthews of any such intention on the part of the cashier. The certificate purports to be a certificate that the bank held the shares as collateral, but does not show that they were collateral for a debt of Coe's to the bank. Such a certificate of stock with the transfer in blank of a responsible bank might, in the ordinary course and usage of dealing in stocks, pass through the hands of many successive purchasers. The possession of the certificate would afford no indication that the holder of it was the person who had originally transferred it to the bank as collateral. If Coe had consented to a sale by the bank of the collateral to pay his debt, or if the bank had in any way acquired the right to sell it, and had sold it, if the assignment had been in blank, the purchaser would have been in the same condition, and Matthews, in dealing with such a purchaser, would have received no better evidence of title against the bank than he received from Coe. Had the bank desired to sell this stock, and placed it in the hands of a broker with a blank transfer in the usual course of business, Matthews, in buying from the broker, would have received no better evidence of title against the bank than in the present case. The mere words "as collateral" in the instrument do not tend to put the purchaser on inquiry, except so far as relates to the authority of the bank to dispose of the collateral as between the bank and its debtor. If this inquiry had been made, it would only have resulted in the information that the assignment was made in its actual form by the joint act and consent of the debtor and the bank. The name of the pledger was not settled in the certificate, as is required by the statute of Massachusetts (Gen. St. Mass. c. 68, § 13). In fact, if Matthews had gone to the bank to make inquiries, he could only have learned that, Coe having paid his debt to the bank, the certificate had been surrendered to him by the bank with a transfer in blank. There would have been nothing in this information to lead him to doubt the genuineness of a certificate to which the bank had given currency by its signature, and on the faith of which he would have learned the bank had loaned twenty thousand dollars, which had been paid. The bank or the cashier did not then doubt the genuineness of the instrument, and no inquiry at the bank would have inspired doubts in the mind of Matthews, there being no such doubts in the minds of the officers of the bank. Nor is it perceived how the bank can contend with any show of reason that Matthews was negligent in not inquiring at the office of the railway corporation. If the duty of making such an inquiry was incumbent on any one, it was surely incumbent on the bank to ascertain the genuineness of the instrument before they gave currency to it, and lulled suspicion and doubt by the responsibility of their own signature. The answer to all the positions taken by the defendant as to notice to Matthews from the words "as collateral" in the instrument, is that there is nothing to connect Coe with those words. There is nothing on the face of the papers, and there was nothing in the fact of the possession of the instrument by Coe, to show that he was the person for whose debt the stock was held as collateral. Had not Matthews a right to suppose, upon receiving this certificate authenticated by the signature of the bank, that they had obtained the certificate themselves from the railroad company in the usual way, thus preventing the possibility of fraud or forgery before receiving as collateral for a loan and before authenticating it with their signature? It is difficult to see in what respect Matthews was negligent.

The defendant, on the other hand, negligently placed confidence in Coe to obtain a transfer from the railroad company of the two hundred shares on which they loaned the sum of twenty-two thousand dollars, instead of taking their certificate directly from the company. But the negligent act which especially imposes upon them a liability in this case is, that they delivered the forged instrument to Coe, authenticated by their signature in blank to a transfer, thus giving to it a currency and negotiability which it would not have possessed had they made the transfer directly to Coe. Thus the bank put it in the power of Coe to commit the fraud on Matthews on which this suit is founded.

In McNeil v. Tenth Nat. Bank, the language of the opinion is precisely applicable to a case like the present: "Such, then, being the nature and effect of the documents with which the plaintiff intrusted his brokers, what position does he occupy towards persons who in reliance upon those documents have, in good faith, advanced money to the brokers or their assigns on a pledge of the shares? When he asserts his title, and claims as against them that he cannot be deprived of his property without his consent, cannot he be truly answered, that by leaving the certificate in the hands of his brokers, accompanied by an instrument bearing his own

signature which purported to be executed for a consideration, and to convey the title away from him, and to empower the bearer of it irrevocably to dispose of the stock, he in fact 'substituted his trust in the honesty of his brokers for the control which the law gave him over his own property,' and that the consequences of a betrayal of that trust should fall upon him who reposed it, rather than upon innocent strangers from whom the brokers were thereby enabled to obtain their money?" If the bank only intended to revest in Coe whatever it acquired from him, it would have been perfectly easy to have limited the transfer to that extent only. A private understanding that such was the intention between Coe and the cashier could not affect the rights of those who, if misled, were misled by the acts of the bank. If the bank, by giving to Coe the transfer in blank with its signature, exhibited him to the money-dealing public as having the competent right of pledge and disposal, with all the usual evidences of such right, it substituted its trust in the honesty of Coe for the control which the bank should have exercised itself over the transfer of the instrument, and should suffer the loss consequent upon his betrayal of the trust, rather than to suffer it to fall upon an innocent stranger.

If the conditions upon which the apparent right of control which the bank conferred upon Coe were not expressed on the face of the instrument, but remained in confidence between the bank and Coe, the case is not distinguishable in principle from that of an agent who receives secret instructions qualifying or restricting an apparently absolute power. Jarvis v. Rogers, 15 Mass. 389; Pickering v. Busk, 15 East, 38; Fatman v. Lobach, 1 Duer, 354; New York & N. H. R. Co. v. Schuyler, 34 N. Y. 31.

One of two innocent parties must suffer in this case by the fraud of Coe. Under similar circumstances, courts have repeatedly held that the party must suffer who has exhibited the greater degree of negligence. The leading case on the indorsement of bills of lading, Lickbarrow v. Mason, 2 Term R. 63, is an authority on this point. See also Lobdell v. Baker, 3 Metc. [Mass.] 469; Polhill v. Walter, 3 Barn. & Adol. 114.

The bank is precluded from setting up the fact of the forgery of the instrument, because it would be a wrong on its own part and an injury to others whose conduct has been influenced by the acts and omissions of the bank. Swayne, J., in Merchants' Bank v. State Bank, 10 Wall. [77 U. S.] 645, says, "Estoppel in pais presupposes an error or a fault, and implies an act in itself invalid. The rule proceeds upon the consideration that the author of the misfortune shall not himself escape the consequences and cast the burden upon another." Clifford, J., recognizes this principle in his dissenting opinion in that case: "If a bank may be held liable in any case upon a certificate of their cashier

that a check is good when they have no funds of the drawer, it is not because the cashier is authorized to make such certificate, but because the bank is bound by his representation, notwithstanding it is false and unauthorized." An estoppel is a salutary rule which prevents a man from proving that to be false which he has once represented to be true, when others have acted on the faith of his representation.

The fact that Matthews has also a right of action against Coe, who is a convict and a bankrupt, does not preclude him from a remedy against the bank. Gurney v. Womersley, 4 El. & Bl. 133.

Upon the facts as agreed in this case, the plaintiff is entitled to judgment, and, according to the agreement of parties, the case is to be referred to an auditor to assess the damages. Judgment accordingly.